356

John Mingo
vs.
The Rhode Island Company          No. 39749

DECISION

June 7, 1919

355, 356

BROWN, J. On the 16th day of August, 1916, the plaintiff was in the employ of the Providence Coal Company, driving a heavily loaded coal truck along Weybosset Street in the City of Providence. A car of the defendant company collided with the coal truck, throwing the plaintiff from his seat to the ground and covering him with coal. The seat was 12 feet high from the ground. This suit is brought to recover damages for the injuries sustained.

The defendant makes no contention that the accident was caused by the negligent management of the car, but insists that the plaintiff entered into an agreement Sept. 27, 1916, approved October 5 following by the Presiding Justice of this court, whereby the plaintiff was to receive compensation from his employer under the Workmen's Compensation Act, at the rate of $5.84 a week during the period of incapacity, and that the plaintiff since that time has been receiving compensation from his employer according to the terms of the agreement.

The defendant refers to Article III, Sec. 21, of the Workmen's Compensation Act, which provides in part as follows: Where the injury for which compensation is payable under the act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee may take proceedings both against that person to recover damages and against any person liable to pay compensation under this act for such compensation, but shall not be entitled to receive both damages and compensation.

The plaintiff replies to this by asserting that the payments received by him from his employer were made under a bona fide agreement that the money was to be returned if damages were obtained from the defendant in this suit entered into between his attorney, acting in his behalf with his employer, and the Aetna Isurance Company, which carried the indemnity insurance of the employer, and that this action is being prosecuted in accordance with the agreement.

The Supreme Court has sustained the right of the plaintiff to maintain the action if the agreement can be established.

Mingo vs. Rhode Island Co. 41 R. I. 423.

The defendant contends that no such bona fide agreement was entered into as to enable the plaintiff to maintain the action in accordance with the decision above referred to.

The agreement attempted to be established by the plaintiff is uncertain and indefinite. He does not pretend to rely upon the agreement in writing dated July 23, 1917, made eleven months after the accident and more than nine months after the agreement with the employer which was approved by the Presiding Justice October 5, 1916 but upon some agreement entered into between Attorney Ziegler and the agent of the Indemnity Company by and with the consent of both the plaintiff and his employer, Mr. Clark.

In reference to this agreement the plaintiff was led to make conflicting statements in his testimony. That there was some agreement in the matter is established beyond question.

Mr. Farwell, agent of the Aetna Company, testifies:

Q. What agreement did Mr. Ziegler, the Attorney representing John Mingo, enter into with you representing the Aetna Liability Insurance Company that carried compensation upon the Providence Coal Company?

A. He agreed that if he recovered from the Trolley Company, that he would repay the Aetna Insurance Company what they had expended in compensation and doctor's fees in this case.

Q. Was that made before he had received any money at all?

A. Yes, sir.

In view of this testimony, and the somewhat vascillating testimony of the plaintiff in this regard, the jury was warranted in finding that a bona fide agreement, such as is contemplated in the decision of the Supreme Court, was made. This action therefore be maintained.

### 358

The defendant further contends that the verdict awarding the plaintiff $9000 is excessive.

The plaintiff was a large, muscular colored man, about 50 years old, employed as a driver at $13 a week. Dr. Houghton and Dr. Rutherford examined the plaintiff; neither found any injury to the bone. Dr. Houghton did not examine the X-ray, but Dr. Rutherford did and found no injury to the bone. Both testified that there was injury to the muscles and some stiffness in the back. A man could not well be thrown and covered with four tons of coal to the ground from a height of 12 feet without causing some soreness to the muscles and stiffness of the back.

The hospital record showed that plaintiff was admitted to the hospital the day of the accident, August 16. There was then considerable pain in the back on moving, some tenderness in right lumbar sacral region, suffering from considerable shock; the next day complaint of severe tenderness in back, not able to sit up or stand up; right lumbar sacral region showed several abrasions and marked swelling in region of right kidney; X-ray showed no bony involvement; August 19 not able to move on right side; August 22nd analysis of urine showed high color and blood, apparently some involvement of kidney; August 25th feels much better, back still tender and some swelling; August 28th up on back rest, urine shows no blood; August 31, up in chair, not able to walk because of severe pain on moving right leg; September 3, able to take a few steps, walked with much lameness; September 5, able to move around

ward but still very lame, discharged improved.

From this record, it does not appear that there is a permanent total disability. The plaintiff is constantly improving. There may be, and probably is a permanent partial disability.

Dr. Rutherford examined the plaintiff in company with Dr. Houghton, February 17, 1917. He testified that he made a complete examination of the plaintiff with his clothes removed. Found no evidence of pain upon pressure upon the spine and sacroiliac joint, though he complained that there was pain in the right hip and bottom of the right heel. He said there was pain most of the time. There was nothing objective in the back anywhere or in the hip. The motions of the leg on the body both downward and forward were normal. As he walked about the room, he had a slight limp.

Dr. Rutherford testified:— "I saw nothing to indicate ankylosis between the third and fifth lumbar vertebrae during the examination."

### 359

Q. Now, as I understand it, the X-ray showed no sign of ankylosis either?

A. No.

Q. Did you see anything in your examination that would prevent him from resuming his work for any continued length of time?

A. No, sir. As I say, I thought he would be well enough to go to work in a little time after I saw him. I didn't see any reason why he should not.

Dr. Houghton found somewhat more serious condition, in his opinion, than Dr. Rutherford found. He testified that he found injury to the plaintiff's back, hip and knee, and that he is now suffering from chronic inflammatory condition of the hip, knee and lower spine.

Dr. Houghton testified:

Q. What is the matter with the lower spine?

A. As near as I can make out there is a complete ankylosis of the lower lumbar vertebrae of the articulation

between the lumbar vertebrae of the sacrum.

Q. What is the trouble with his hip?

A. There is a limited amount of motion when the thigh is flexed upon the abdomen and especially a limited amount of adduction. I believe he will always be lame. He will never be able to perform the duties of a teamster again. He will never be able to walk without limping or being lame.

Q. Have you had X-rays taken to support the supposition in this matter?

A. I have recommended them. I have never seen one in this man's case.

Considering the fact that there is no injury to the bone, and that the plaintiff steadily improved during his stay in the hosptial, and since he left the hospital has improved to some extent, and the positive testimony of Dr. Rutherford, after a thorough examination of the plaintiff, I do not consider that the jury were warranted in finding that the plaintiff was totally and permanently disabled and in assessing damages on that basis, nothwithstanding the serious condition of the plaintiff as appears to be indicated by the testimony of Dr. Houghton.

The plaintiff appeared in court, a healthy, vigorous looking man, and gave testimony. There is no doubt of his ability to do some kinds of work. The injustice of the verdict demands a revision.

If within 10 days the plaintiff remits from his verdict the sum of $3500 and accepts judgment for $5500, a new trial is denied, otherwise granted, which new trial shall be limited to the question of damages alone.

For plaintiff: William H. McSoley.

For defendant: Clifford Whipple & A. R. Willams.